IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GWENDOLYN TAYLOR<br>123 East 156th Street, Apt. 518<br>Cleveland, Ohio 44110 | )<br>)<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>) | |
| v. | )<br>) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND REINSTATEMENT** |
| TVI, INC. D/B/A SAVERS<br>30604 Lake Shore Boulevard<br>Willowick, Ohio 44095 | )<br>)<br>)<br>) | **JURY DEMAND ENDORSED**<br>**HEREIN** |
| **Serve also:**<br>TVI, Inc. d/b/a Savers<br>c/o Corporate Creations Network Inc.<br>119 East Court Street<br>Cincinnati, Ohio 45202 | )<br>)<br>)<br>)<br>)<br>) | |
| Defendant. | ) | |

Plaintiff, Gwendolyn Taylor, by and through undersigned counsel, as her Complaint against the Defendants, states and avers the following:

## PARTIES AND VENUE

1. Taylor is a resident of the city of Cleveland, county of Cuyahoga, state of Ohio.

2. TVI, Inc. d/b/a Savers ("Savers") is a foreign corporation that operated a business located at 30604 Lake Shore Boulevard, Willowick, Ohio 44095.

3. Savers was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. § 2000 *et seq.*

4. Savers was at all times hereinafter mentioned an employer within the meaning of 42 U.S.C. 126 § 12101 *et seq.*

5. Savers was at all times hereinafter mentioned an employer within the meaning of R.C. § 4112.01 *et seq.*

## **JURISDICTION & VENUE**

6. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 in that Taylor is alleging a Federal Law Claim under the Americans with Disabilities Act ("ADA"), 42 U.S.C. 126 § 12101 *et seq.*, the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and the Age Discrimination in Employment Act, 42 U.S.C. § 621 *et seq.*

7. All material events alleged in this Complaint occurred in Wood County.

8. This Court has supplemental jurisdiction over Taylor's state law claims pursuant to 28 U.S.C. § 1367 as Taylor's state law claims are so closely related to her federal law claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

10. Within 300 days of the conduct alleged below, Taylor filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2021-00814 against Savers.

11. On July 14, 2021, the EEOC issued and mailed a Notice of Right to Sue letter to Taylor regarding the Charges of Discrimination brought by Taylor against Savers in EEOC Agency Charge No. 532-2021-00814.

12. Taylor received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

13. Taylor has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

14. Taylor has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

15. Taylor is African American.

16. Taylor is a former employee of Savers.

17. Taylor began working for Savers in or around October 2014.

18. Savers employed Taylor as a Production Associate.

19. Taylor had a strong history of performance with Savers.

20. Taylor consistently received pay raises.

21. Taylor did not have any history of meaningful discipline.

22. Cheryl Last Name Unknown was Taylor's immediate supervisor.

23. Savers employed Cheryl LNU as a manager.

24. Upon information and belief, Savers hired Cheryl LNU in or around June 2020.

25. Cheryl LNU is Caucasian.

26. During all material events asserted herein, Cheryl LNU has and/or had authority to hire, fire, and/or discipline employees.

27. Cheryl LNU did not participate in the decision to hire Taylor.

28. Taylor suffers from sciatica.

29. Taylor's sciatica caused her pain while working.

30. Taylor's sciatica caused her to miss a few days of work to consult her physician.

31. Taylor's sciatica substantially impairs one or more of her major life functions, including walking.

32. Taylor's sciatica substantially impairs one or more of her major life functions, including working.

33. As a result of suffering from sciatica, Taylor is disabled.

34. Alternatively, Savers perceived Taylor to be disabled.

35. Despite any real or perceived disability, Taylor was capable of performing her essential job functions with or without reasonable accommodation(s).

36. Savers employed Taylor during the COVID-19 pandemic.

37. In or around March 2020, Savers temporarily closed for three months due to COVID-19.

38. After returning to work when Savers reopened in or around June 2020, Taylor's sciatica symptoms worsened while she worked.

39. After returning to work when Savers reopened in or around June 2020, Cheryl LNU became Taylor's supervisor.

40. Cheryl LNU socialized politely with the Caucasian employees.

41. Cheryl LNU socialized politely with the younger employees.

42. Cheryl LNU did not socialize politely with African American employees.

43. Cheryl LNU did not socialize politely with the older employees.

44. When Taylor needed time off to attend doctor's appointments for her disability, Taylor provided doctor's notes to Savers.

45. Savers did not require doctor's notes from non-disabled employees when they needed time off for doctor's appointments.

46. Alternatively, Savers did not require doctor's notes from employees who it did not perceive to be disabled when they needed time off for doctor's appointments.

47. Cheryl LNU wrote Taylor up for having too many call-offs.

48. Cheryl LNU did not write up younger employees who had more call-offs than Taylor.

49. Cheryl LNU did not write up Caucasian employees who had more call-offs than Taylor.

50. Cheryl LNU did not write up non-disabled employees who had more call-offs than Taylor.

51. Alternatively, Cheryl LNU did not write up employees she did not perceive to be disabled who had more call-offs than Taylor.

52. Cheryl LNU wrote Taylor up for having too many call-offs because she is African American.

53. Cheryl LNU wrote Taylor up for having too many call-offs because she is older.

54. Cheryl LNU wrote Taylor up for having too many call-offs because she is disabled.

55. Alternatively, Cheryl LNU wrote Taylor up for having too many call-offs because she perceived Taylor to be disabled.

56. Near the end of September 2020, Taylor overheard Cheryl LNU make a racially insensitive comment about an older, African American coworker ("Racial Wig Comment").

57. The following day, Taylor reported the Racial Wig Comment to Lisa Last Name Unknown ("Discrimination Complaint").

58. Lisa LNU was Cheryl LNU's supervisor.

59. Savers employed Lisa LNU as the district manager.

60. Lisa LNU is Caucasian.

61. During all material events asserted herein, Lisa LNU has and/or had authority to hire, fire, and/or discipline employees.

62. Lisa LNU did not participate in the decision to hire Taylor.

63. Lisa LNU had a duty to investigate the Discrimination Complaint.

64. Upon information and belief, Savers has a policy requiring investigations following receipt of a complaint of discrimination and retaliation.

65. An investigation should include interviewing the complainant.

66. An investigation should include interviewing the subject of the complaint.

67. An investigation should include interviewing the subject of the reported incident.

68. An investigation should include interviewing witnesses to the reported incident.

69. An investigation should include getting a written statement from the complainant.

70. An investigation should include getting a written statement from the subject of the complaint.

71. An investigation should include getting a written statement from the subject of the reported incident.

72. In response to Taylor's Discrimination Complaint, Lisa LNU did not interview Cheryl LNU.

73. In response to Taylor's Discrimination Complaint, Lisa LNU did not get a written statement from Taylor.

74. In response to Taylor's Discrimination Complaint, Lisa LNU did not get a written statement from Cheryl LNU.

75. In response to Taylor's Discrimination Complaint, Lisa LNU did not take corrective action against Cheryl LNU.

76. Similarly, it is well settled that an employer's failure to investigate, or take prompt remedial action against discrimination, thus allowing the discrimination to continue, is also an adverse employment action. *Ellis v. Jungle Jim's Mkt., Inc.*, 12th Dist. No. CA2014-12-254, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 39.

77. Lisa LNU ratified Cheryl LNU's discriminatory conduct in failing to conduct an investigation into Taylor's Discrimination Complaint.

78. Lisa LNU ratified Cheryl LNU's discriminatory conduct in failing to discipline Cheryl LNU following Taylor's Discrimination Complaint.

79. Subsequent to the Discrimination Complaint, Cheryl LNU unfairly criticized Taylor's work and sent her home.

80. Cheryl LNU did not unfairly criticize employees' work who did not complain of discrimination or send them home.

81. Cheryl LNU did not unfairly criticize Caucasian employees' work or send them home.

82. Cheryl LNU did not unfairly criticize younger employees' work or send them home.

83. Cheryl LNU did not unfairly criticize non-disabled employees' work or send them home.

84. Alternatively, Cheryl LNU did not unfairly criticize employees' work whom she did not perceive to be disabled or send them home.

85. Cheryl LNU unfairly criticized Taylor's work and sent her home because she complained about discrimination.

86. Cheryl LNU unfairly criticized Taylor's work and sent her home because she is African American.

87. Cheryl LNU unfairly criticized Taylor's work and sent her home because she is older.

88. Cheryl LNU unfairly criticized Taylor's work and sent her home because she is disabled.

89. Alternatively, Cheryl LNU unfairly criticized Taylor's work and sent her home because she perceived Taylor to be disabled.

90. On or around November 7, 2020, Savers terminated Taylor's employment.

91. At the time of her termination, Taylor was 61 years old.

92. Savers terminated Taylor's employment in retaliation for reporting discrimination.

93. Savers terminated Taylor's employment because she is African American.

94. Savers terminated Taylor's employment because she is older.

95. Savers terminated Taylor's employment because she is disabled.

96. Alternatively, Savers terminated Taylor's employment because it perceived Taylor to be disabled.

## COUNT I: DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. 126 § 12101

### *et seq.*

97. Taylor restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

98. Taylor suffers from sciatica.

99. Taylor's sciatica caused her pain while working.

100. Taylor's sciatica caused her to miss a few days of work to consult her physician.

101. Taylor's sciatica substantially impairs one or more of her major life functions, including walking.

102. Taylor's sciatica substantially impairs one or more of her major life functions, including working.

103. As a result of suffering from sciatica, Taylor is disabled.

104. Alternatively, Savers perceived Taylor to be disabled.

105. Despite any real or perceived disability, Taylor was capable of performing her essential job functions with or without reasonable accommodation(s).

106. Savers treated Taylor differently than other similarly-situated employees based on her disabling condition.

107. Alternatively, Savers treated Taylor differently than other similarly-situated employees based on her perceived disabling condition.

108. On or about November 7, 2020, Defendant terminated Taylor's employment without just cause.

109. Defendant terminated Taylor's employment based her disability.

110. Alternatively, Defendant terminated Taylor's employment based her perceived disability.

111. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Taylor based on her disability.

8

112. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* when it discharged Taylor based on her perceived disability.

113. Defendant violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Taylor based on her disabling condition.

114. Alternatively, Defendant violated 42 U.S.C. 126 § 12101 *et seq.* by discriminating against Taylor based on her perceived disabling condition.

115. Taylor suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 126 § 12101 *et seq.*

116. As a direct and proximate result of Defendant's conduct, Taylor suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

117. Taylor restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

118. Taylor suffers from sciatica.

119. Taylor's sciatica caused her pain while working.

120. Taylor's sciatica caused her to miss a few days of work to consult her physician.

121. Taylor's sciatica substantially impairs one or more of her major life functions, including walking.

122. Taylor's sciatica substantially impairs one or more of her major life functions, including working.

123. As a result of suffering from sciatica, Taylor is disabled.

124. Alternatively, Savers perceived Taylor to be disabled.

125. Despite any real or perceived disability, Taylor was capable of performing her essential job functions with or without reasonable accommodation(s).

9

126. Savers treated Taylor differently than other similarly-situated employees based on her disabling condition.

127. Savers treated Taylor differently than other similarly-situated employees based on her perceived disabling condition.

128. On or about November 7, 2020, Defendant terminated Taylor's employment without just cause.

129. Defendant terminated Taylor's employment based her disability.

130. Alternatively, Defendant terminated Taylor's employment based her perceived disability.

131. Defendant violated R.C. § 4112.02 when it discharged Taylor based on her disability.

132. Alternatively, Defendant violated R.C. § 4112.02 when it discharged Taylor based on her perceived disability.

133. Defendant violated R.C. § 4112.02 by discriminating against Taylor based on her disabling condition.

134. Alternatively, Defendant violated R.C. § 4112.02 by discriminating against Taylor based on her perceived disabling condition.

135. Taylor suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq.*

136. As a direct and proximate result of Defendant's conduct, Taylor suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT III: RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

137. Taylor restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

138. Throughout her employment, Taylor was fully competent to perform her essential job duties.

139. Cheryl LNU treated Taylor differently than other similarly situated employees based on her race.

140. Cheryl LNU violated R.C. § 4112.02(A) *et seq.*by discriminating against Taylor due to her race.

141. On or about November 7, 2020, Savers terminated Taylor without just cause.

142. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

143. Savers terminated Taylor based on her race.

144. Savers violated R.C. § 4112.01 et. seq. when they terminated Taylor based on her race.

145. Taylor suffered emotional distress as a result of Savers' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

146. As a direct and proximate result of Savers' conduct, Taylor has suffered and will continue to suffer damages, including economic and emotional distress damages.

**COUNT IV: RACE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.***

147. Taylor restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

148. Throughout her employment, Taylor was fully competent to perform her essential job duties.

149. Cheryl LNU treated Taylor differently than other similarly situated employees based on her race.

150. Cheryl LNU violated R.C. § 4112.02(A) *et seq.*by discriminating against Taylor due to her race.

151. On or about November 7, 2020, Savers terminated Taylor without just cause.

152. At all times material herein, similarly-situated non-African-American employees were not terminated without just cause.

11

153. Savers terminated Taylor based on her race.

154. Savers violated R.C. § 4112.01 et. seq. when they terminated Taylor based on her race.

155. Taylor suffered emotional distress as a result of Savers' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

156. As a direct and proximate result of Savers' conduct, Taylor has suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT V: AGE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 621 *et seq.*

157. Taylor restates each and every prior paragraph of this complaint, as if it were fully restated herein.

158. Taylor was 61 years old at the time of her termination.

159. At all times relevant, Taylor was a member of a statutorily-protected class under 42 U.S.C. § 621 *et seq*.

160. Savers treated Taylor differently from other similarly situated employees based on her age.

161. As of November 7, 2020, Taylor was fully qualified for her position and employment with Savers.

162. Taylor, at age 61, was a member of a statutorily-protected class under 42 U.S.C. § 621 *et seq*. at the time she was terminated from her employment with Savers.

163. Taylor was terminated from her employment on or around November 7, 2020.

164. After terminating Taylor, Savers replaced Taylor with a person who was significantly younger and/or not belonging to the protected class under 42 U.S.C. § 621 *et seq*.

165. Savers violated under 42 U.S.C. § 621 *et seq*. by discriminating against Taylor based on her age.

166. Taylor suffered emotional distress as a result of Savers' conduct, and is entitled emotional distress damages pursuant to under 42 U.S.C. § 621 *et seq*.

167. As a direct and proximate result of the Savers ' conduct, Taylor suffered and will continue to suffer damages, including economic and emotional distress damages.

## COUNT VI: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

168. Taylor restates each and every prior paragraph of this complaint, as if it were fully restated herein.

169. Taylor was 61 years old at the time of her termination.

170. At all times relevant, Taylor was a member of a statutorily-protected class under R.C. § 4112.14(B).

171. Savers treated Taylor differently from other similarly situated employees based on her age.

172. As of November 7, 2020, Taylor was fully qualified for her position and employment with Savers.

173. Taylor, at age 61, was a member of a statutorily-protected class under R.C. § 4112.14(B) at the time she was terminated from her employment with Savers.

174. Taylor was terminated from her employment on or around November 7, 2020.

175. After terminating Taylor, Savers replaced Taylor with a person who was significantly younger and/or not belonging to the protected class under R.C. § 4112.14(B).

176. Savers violated R.C. § 4112.02 and R.C. § 4112.99 by discriminating against Taylor based on her age.

177. Taylor suffered emotional distress as a result of Savers' conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

178. As a direct and proximate result of the Savers ' conduct, Taylor suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VII: RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e *et seq.*

179. Taylor restates each and every prior paragraph of this complaint, as if it were fully restated herein.

180. As a result of the discriminatory conduct described above, Taylor complained about the race discrimination she witnessed to Lisa LNU.

181. Subsequent to Taylor reporting of discrimination to Lisa LNU, Cheryl LNU unfairly criticized Taylor's work and sent her home.

182. Subsequent to Taylor reporting of discrimination to Lisa LNU, Cheryl LNU terminated Taylor's employment.

183. Defendant's actions were retaliatory in nature based on Taylor 's opposition to the unlawful discriminatory conduct.

184. Taylor suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. § 2000e *et seq*.

185. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Taylor, she suffered and will continue to suffer damages, including economic and emotional distress damages.

### COUNT VIII: RETALIATION IN VIOLATION OF R.C. § 4112.01 *et seq.*

186. Taylor restates each and every prior paragraph of this complaint, as if it were fully restated herein.

187. As a result of the discriminatory conduct described above, Taylor complained about the race discrimination she witnessed to Lisa LNU.

188. Subsequent to Taylor reporting of discrimination to Lisa LNU, Cheryl LNU unfairly criticized Taylor's work and sent her home.

189. Subsequent to Taylor reporting of discrimination to Lisa LNU, Cheryl LNU terminated Taylor's employment.

190. Defendant's actions were retaliatory in nature based on Taylor 's opposition to the unlawful discriminatory conduct.

191. Pursuant to R.C. § 4112.02(I), it is an unlawful discriminatory practice "to discriminate in any manner against any other person because that person has opposed any unlawful discriminatory practice defined in this section…"

192. Taylor suffered emotional distress as a result of Defendant's conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 *et seq*.

193. As a direct and proximate result of Defendant's retaliatory discrimination against and termination of Taylor, she suffered and will continue to suffer damages, including economic and emotional distress damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Taylor demands from Savers the following:

(a) Issue an order requiring Savers to restore Taylor to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against Savers of compensatory and monetary damages to compensate Taylor for lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

(c) An award of punitive damages against Savers in an amount in excess of $25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Taylor's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,


*/s/ Taurean J. Shattuck*

Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)
**THE SPITZ LAW FIRM, LLC**
25200 Chagrin Boulevard, Suite 200
Beachwood, OH 44122
Phone: (216) 291-4744
Fax:   (216) 291-5744
Email: Fred.Bean@spitzlawfirm.com
       Taurean.Shattuck@spitzlawfirm.com
       David.Byrnes@spitzlawfirm.com


*Attorneys For Plaintiff*

## JURY DEMAND

Plaintiff Gwendolyn Taylor demands a trial by jury by the maximum number of jurors permitted.

/s/ Taurean J. Shattuck
Fred M. Bean (0086756)
Taurean J. Shattuck (0097364)
David Byrnes (0086975)